UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARRICK S. REDMON,

        Petitioner,

v.                                          Case No. 3:13-cv-277-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

**ORDER**

**I. Status**

    Petitioner Darrick Shermain Redmon, an inmate of the Florida penal system, initiated this action on March 8, 2013, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Redmon challenges a 2009 state court (Clay County, Florida) judgment of conviction for possession of photographs/sexual performance by a child. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Response; Doc. 16) with exhibits (Resp. Ex.). On September 25, 2013, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 7), admonishing Redmon regarding his obligations and giving Redmon a time frame in which to submit a reply. Redmon submitted a brief in reply, see Petitioner's Reply to Response for Writ of Habeas Corpus (Reply; Doc. 17), and this case is ripe for review.

## II. Procedural History

On June 25, 2009, in Case No. 10-2008-CF-1606, the State of Florida charged Redmon with twenty-six counts of possession of photographs/sexual performance by a child. Resp. Ex. A, Amended Information. In July 2009, Redmon proceeded to trial, see Resp. Ex. B, Transcript of the Jury Trial (Tr.), at the conclusion of which, on July 14, 2009, a jury found him guilty of twenty-six counts of possession of photographs/sexual performance by a child. Id. at 212; Resp. Ex. D, Verdicts. On August 6, 2009, the court sentenced Redmon to concurrent terms of imprisonment of five years as to counts one through ten, and concurrent terms of imprisonment of five years as to counts eleven through twenty, with the sentences for counts eleven through twenty to run consecutively to counts one through ten. Resp. Ex. G, Judgment. Upon release, Redmon is to be placed on five years of sex offender probation for counts twenty-one through twenty-six, to run concurrently with each other. Id. at 130.

On appeal, Redmon, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it did not permit Ronald Southard (Redmon's roommate) to testify as to the age of Jeremy Monroe, a boy under the age of eighteen, as that evidence supported Redmon's defense and added credibility to his explanation for recanting his confession. Resp. Ex. H. The State filed an answer brief. Resp. Ex. I. On November 9, 2010, the appellate court

2

affirmed Redmon's conviction and sentence per curiam without issuing a written opinion. Redmon v. State, 48 So.3d 57 (Fla. 1st DCA 2010); Resp. Ex. J. The mandate issued on November 29, 2010. See http://www.1dca.org, Darrick Redmon v. State of Florida, No. 1D09-4546.

On October 25, 2011, Redmon filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. K. In his request for post-conviction relief, Redmon asserted that his trial counsel were ineffective because they: described the photographs as distasteful and vile during opening statement, and failed to object when the prosecutor read an agreed-upon stipulation which included brief descriptions of the pornographic images (ground one); failed to object and move for a mistrial during the testimony of Sergeant Kenneth Jones, Detective Fred Cummings and Ronald Southard (ground two); and failed to object and move for a mistrial when the prosecutor made improper remarks during closing arguments (grounds three and four). Id. The post-conviction court denied the motion on July 19, 2012, see Resp. Ex. L, and later denied Redmon's motion for rehearing, see Resp. Exs. M; N.

On appeal, Redmon filed a pro se brief. Resp. Ex. O. The State filed its notice that it did not intend to file an answer brief. Resp. Ex. P. On December 14, 2012, the appellate court affirmed the trial court's denial per curiam. Redmon v. State, 103 So.3d 150

3

(Fla. 1st DCA 2012); Resp. Ex. Q. The mandate issued on January 9, 2013. Resp. Ex. R.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d); Response at 6-7.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Redmon's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody

4

>pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

>Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,–U.S. –, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v.

Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. See Richter, 131 S.Ct. at 786-87; Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014), cert. denied, 135 S.Ct. 2323 (2015); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230 (11th Cir. 2014), cert. denied, 135 S.Ct. 2126 (2015).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Hittson, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); Richter, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th

7

Cir. 2002). Thus, to the extent that Redmon's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052.

> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Richter, 131 S.Ct. at 787-88. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> Richter, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." Id.
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the Strickland standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." Knowles v.

9

> Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied Strickland's
> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. Richter, - U.S. at -, 131 S.Ct. at
> 788.

Hittson, 759 F.3d at 1248; Knowles v. Mirzayance, 556 U.S. 111, 123

(2009). "In addition to the deference to counsel's performance

mandated by Strickland, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th

Cir. 2004). As such, "[s]urmounting Strickland's high bar is never

an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Redmon asserts that the trial court erred when

it did not permit Ronald Southard to testify as to the age of

Jeremy Monroe, a minor. See Petition at 4-5; Reply at 8-14. Redmon

argues that the testimony was relevant to his defense because,

although he confessed, he did so only to protect Southard, but

later chose to stop protecting him when he learned that Southard

was intimately involved with Monroe. Redmon argued this issue on

direct appeal, see Resp. Ex. H, and the State filed an answer

brief, see Resp. Ex. I. Ultimately, the appellate court affirmed

Redmon's conviction and sentence per curiam without issuing a written opinion. See Redmon, 48 So.3d 57; Resp. Ex. J.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. I at 5-9, and therefore, the appellate court may have affirmed Redmon's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Redmon is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Redmon's claim is, nevertheless, without merit. At trial, defense counsel called Southard as a witness and asked him about his relationship with Jeremy Monroe. The following colloquy ensued.

> [DEFENSE COUNSEL] And, in fact, you are not charged with anything but I got to ask the question. Did you ever determine how old Mr. Monroe was?
>
> [PROSECUTOR]: Objection, Your Honor, relevance.

THE COURT: What's the relevancy here?

Tr. at 139. Outside the presence of the jury, defense counsel

explained:

> Okay, the relevance is that Mr. Redmon
> later found out that Mr. Monroe was under the
> age of 18. And Mr. Redmon advised me that he
> had confessed to protect Mr. Southard until he
> found out Mr. Southard was having a
> relationship with a minor. He found out that
> he was having a relationship with a minor,
> that changed everything and that's the
> relevance.

Id. at 140. Defense counsel told the trial judge that, if the court

did not allow Southard to answer the question, he could "get it

through Mr. Redmon if that's necessary." Id. at 141. The trial

judge sustained the State's objection. Id.

Redmon testified about his interview with Detective Eckert and

his subsequent discovery about Southard's relationship with Monroe.

Id. at 153-56. He testified that, upon discovering Monroe's "actual

age" and that Southard had been involved with Monroe, he contacted

law enforcement. Id. at 156.

> I called Detective Eckert. At the time,
> he was on vacation for like about two weeks.
> And I -- he would get back into contact with
> me. He eventually called me back at my job to
> tell me -- to update me on everything. And I,
> basically, let him know everything that
> happened as far as me not telling the truth in
> the interview.

Id. at 156-57. Although Redmon asserts that Southard's testimony

was crucial to explain why Redmon later recanted his confession,

Detective Eckert, on rebuttal, testified that Redmon never told him, prior to trial, that he had lied during the interview.

> [PROSECUTOR]: Detective, after you interviewed the defendant, was there ever a time that he called you and told you that he had lied during the course of his interview?
>
> [DETECTIVE ECKERT]: No.
>
> [PROSECUTOR]: During the time that you interviewed the defendant and he was arrested, did you ever have a conversation in person or on the phone with him?
>
> [DETECTIVE ECKERT]: No.
>
> [PROSECUTOR]: During the time that the defendant's -- at the time of the defendant's interview and the time the defendant was arrested, did you ever receive a voicemail message on your voicemail indicating the defendant had called you?
>
> [DETECTIVE ECKERT]: No.

Id. at 166-67.

Although alleged state law errors generally are not grounds for federal habeas relief, "a habeas court may review a state court's evidentiary rulings in order to determine whether those rulings violated the petitioner's right to due process by depriving him of a fundamentally fair trial." Copper v. Wise, 426 F. App'x 689, 692 (11th Cir. 2011) (citing Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)). The Eleventh Circuit explained:

> Indeed, in a habeas corpus action brought by a state prisoner, our authority is "severely restricted" in the review of state evidentiary rulings. Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam); see Estelle v.

13

McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." Lisenba,[1] 314 U.S. at 228, 62 S.Ct. 280; see Estelle, 502 U.S. at 75, 112 S.Ct. 475 (holding that habeas relief was not warranted because neither the introduction of the challenged evidence, nor the jury instruction as to its use, "so infused the trial with unfairness as to deny due process of law"); Bryson v. Alabama, 634 F.2d 862, 864-65 (5th Cir. Unit B Jan. 1981) ("A violation of state evidentiary rules will not in and of itself invoke Section 2254 habeas corpus relief. The violation must be of such a magnitude as to constitute a denial of 'fundamental fairness.'"); cf. Chambers,[2] 410 U.S. at 302, 93 S.Ct. 1038 (concluding that the exclusion of "critical evidence" denied the defendant "a trial in accord with traditional and fundamental standards of due process").

Taylor, 760 F.3d at 1295 (footnote omitted); Smith v. Jarriel, 429 F. App'x 936, 937 (11th Cir. 2011). On this record, the trial court did not err when it did not allow Southard to testify as to Monroe's age. In the context of the trial as a whole, the trial court's ruling did not so infuse the trial with unfairness as to deny Redmon due process of law. Redmon is not entitled to federal habeas relief on ground one.

---

[1] Lisenba v. California, 314 U.S. 219 (1941).

[2] Chambers v. Mississippi, 410 U.S. 284 (1973).

### B. Ground Two

As ground two, Redmon asserts that counsel (Assistant Public Defenders Jennings Mark Wright and Sean Anthony Espenship) were ineffective because, during opening statement, counsel described the photographs as distasteful and vile, and failed to object when the prosecutor read an agreed-upon stipulation which included brief descriptions of the pornographic images. See Petition at 6-7; Reply at 14-15. Redmon raised the ineffectiveness claims in his Rule 3.850 motion in state court. Identifying the two-prong Strickland ineffectiveness test as the controlling law, the post-conviction court denied the Rule 3.850 motion with respect to these claims, stating in pertinent part:

> In his first ground for relief, Defendant alleges trial counsel was ineffective in two respects. First, Defendant contends that counsel performed deficiently by entering a stipulation with the State in which the jury was read brief descriptions of the pornographic images found on Defendant's computer. Defendant alleges that counsel led him to believe that by stipulating the photos depicted minor children engaged in sexual performances, it would be unnecessary to provide the jury any details regarding the specific images. At trial, the jury was provided a one sentence description of the images at issue in each count.[3] For instance, as to Count I, the jury was instructed:
>
> > Count one, the series of still photographs which constitutes the basis of count one depicts a

_____

[3] See Tr. at 117-26 (prosecutor's reading of the agreed-upon stipulation of facts as to each count).

> minor child engaged in sexual
> performance. Specifically, placing
> adult male penis in the child's
> mouth. The series of still
> photographs constitutes child
> pornography under the Florida law.
> This series of still photographs
> was found in the computer with
> the serial number 45GMX81.

(Exhibit "C," page 119.) Defendant argues that
providing similar descriptions as to each
count was prejudicial and unnecessary in light
of the agreed upon stipulation that the
photographs depicted minors engaged in sexual
acts with other minors and adults. Defendant
argues that the reason he entered the
stipulation was that "if the jury were to view
[the images] the very nature of the acts would
in all probability inflame the jury's emotions
and result in prejudice to the defendant[.]"
(Defendant's Motion, page 4.) Defendant
alleges that "describing in detail the very
acts depicted in the photographs takes on the
same effect as that of the reader of a novel
who perceives clearly in vision that which he
just read . . . ." (Defendant's Motion, page
8.)

[T]he Court does not find that counsel's offer
to stipulate constitutes deficient
performance. The Court is not persuaded by
Defendant's argument that the descriptions of
the images were just as likely to inflame the
jury's emotions as the pictures themselves.
Providing the jury with a relatively limited
description of the images was far less
prejudicial than showing them the actual
series of photographs. Accordingly, the Court
finds defense counsel employed a perfectly
legitimate, calculated trial tactic of
limiting the extent that the jury would be
exposed to the key evidence - images of child
pornography. The fact that the defense tactic
proved unsuccessful in that Defendant was
convicted and received a severe sentence,
cannot in hindsight change this result.

16

Assuming _arguendo_, Defendant could establish counsel performed deficiently by agreeing to the stipulation, Defendant cannot demonstrate that but for counsel's alleged ineffective assistance, the result of his trial would have been different. Defendant alleges that had he known the descriptions would be read to the jury he never would have agreed to the stipulation. However, there is no evidence that the prosecutor who tried the case would have agreed to a stipulation that excluded the descriptions of the images. In fact, it is highly unlikely the prosecutor would have agreed to such a stipulation as the descriptions were pertinent to the jury's determination of whether Defendant knowingly possessed the images with the knowledge that the images depicted sexual conduct by a child less than 18 years of age. To prove its case, the State introduced a video-taped interview of Defendant in which he admitted, several times, that he was the person who downloaded the images and that he knew the image files included sexual conduct by a child less than 18.[4] (Exhibit "C," pages 77-91.) At trial, Defendant testified that he was lying to protect his former roommate and boyfriend, Ronald Southard, whom Defendant alleges was the person who downloaded the images. Consequently, the State's case against Defendant depended primarily on whether the jury believed Defendant was telling the truth during his initial interview or whether the jury believed he was, in fact, lying during the interview to protect his former boyfriend. The brief descriptions of the photos could provide the jury with valuable insight into whether Defendant's assertion that he initially lied to detectives was true. For example, during the interview, Defendant made the following statements:

> Well, when I first ever did it --
> like I said, it was an accident.

---

[4] _See_ Tr. at 50, 77-91; Resp. Ex. C, Redmon's sworn statement; _see also_ Tr. at 93.

> And that night when I downloaded it,
> I just, I looked at it and -- I
> mean, it was like a random selection
> out of a bunch that came down.  And
> I just picked one and downloaded it.
>
> (Inaudible) -- don't get any
> sexual stimulation out of it. But I
> look at it and just  -- and there's
> some things that I have downloaded
> -- (Inaudible) -- I felt like, oh,
> my God. I have two nieces and a
> nephew that I'm very close to and I
> couldn't   imagine   anyone   ever
> touching them  like that or doing
> anything like that.[5]

(Exhibit "C," page 80.) Defendant's statements arguably reflect his awareness that the images found on the computer included pictures of boys, as well as girls, a pertinent fact the detectives never told Defendant prior to his admission. Therefore, the brief descriptions provided for each count were necessary so as to allow the jury to evaluate the veracity of Defendant's statements during his initial interview.

Defendant   further   asserts   that   the introduction of the descriptions was contrary to the holding of Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (implemented in Florida by the Florida Supreme Court's decision in Brown v. State, 719 So.2d 882 (Fla. 1998)). In Old Chief, the United States Supreme Court held that, in a prosecution for possession of a firearm by a felon, it was an abuse of discretion to admit evidence   detailing   the   nature   of   the defendant's prior offense where the defendant was prepared to stipulate that he was a felon. In Old Chief, however, the stipulation was relevant and probative only as to one element of   the   charged   crime,   i.e.   the defendant's status as a convicted felon. The United States

---

[5] See Tr. at 80.

Supreme noted that evidence may be valuable not only for its relevance to a single element, but also because it may prove multiple elements. <u>Old Chief</u>, 519 U.S. at 187, 117 S.Ct. 644. Unlike the prior conviction at issue in <u>Old Chief</u>, the descriptions in the instant case were relevant and probative as to all three elements of the charged offenses. Moreover, as the Supreme Court itself noted, <u>Old Chief</u> is an exception to the usual rule that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." 519 U.S. at 186-87, 117 S.Ct. 644. The actual evidence can do what no stipulation ever could, "not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment." <u>Id.</u> at 187-88, 117 S.Ct. 644. The descriptions were valuable to the State to embolden the jury to infer guilt by strengthening the evidentiary picture as a whole:

> Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once . . . . Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.

<u>Old Chief</u>, 519 U.S. at 187, 117 S.Ct. 644. Defendant was charged with twenty-six counts of knowingly possessing child pornography. The evidence - a one sentence description of the images or video at issue in each count - was, by its nature, inherently disturbing but

19

unavoidable. For all the reasons above, the
Court finds Defendant cannot demonstrate that:
(1) counsel's performance was outside the wide
range of reasonable professional assistance,
or (2) counsel's deficient performance
prejudiced the defense; that is, that there is
a reasonable probability that the outcome of
the proceeding would have been different
absent counsel's allegedly deficient
performance. Strickland v. Washington, 466
U.S. 668, 687 (1984).

As part of his first ground for relief,
Defendant also alleges counsel performed
deficiently by telling the jury in opening
statement "how unpleasant, distasteful, and
vile the photographs are . . ." (Defendant's
Motion, page 10.) Defendant argues trial
counsel's opening statement "flies in the face
of reasonableness as it was counter-productive
to both strategy and the belief to exclude the
photographs in the first place." Id. A reading
of the opening statement as a whole does not
support the conclusion offered by Defendant:

> Now, we ask that you listen to all
> of the evidence. It's like reading a
> book. You wait to finish the entire
> book before you make a judgment
> call. Now, you are going to hear
> some very unpleasureable (sic)
> things regarding children. That's
> the nature of this case.

> Now, you will also learn that the
> computer here was found in his
> roommate's room. Not his room, his
> roommate' room. There's no security
> on that computer. Anyone can access
> it. There's more than one person
> that was able to use it.

> And because of the sensitive nature
> of the images found on the computer,
> we along with the state attorney and
> our client, have agreed that you
> don't need to see the photos, those
> images, because this case is not

necessarily about children. It's
not. No child here was victimized.

[Defendant] did not sodomize, did
not rape, did not touch, did not
beat not one child. This case is
simply about possession of photos.
**Photos that were created to put vile
in the world according to most of
us.**

Now, **these photos are distasteful.**
And again, that's another reason
that we're refraining or we're just
stipulating to the admission of
those photos as given that they were
found on this computer. That's why I
say this case is very simple. Very
easy.[6]

Exhibit "C," pages 20-21.) Defendant argues
that these remarks were "counter-productive"
to the defense's trial strategy and that there
is a reasonable probability that the outcome
of the trial would have been different had
trial counsel not made these statements. In
evaluating these comments under the first
prong of the <u>Strickland</u> test, the Court does
not find trial counsel's statements amount to
deficient representation. Taken in context,
trial counsel made these statements to
indirectly draw attention to the crux of the
defense, which was that it was not Defendant
who downloaded these images, but rather his
former boyfriend. In line with this defense,
it is understandable that counsel would want
to express to the jury that Defendant finds
these images as unpleasant, distasteful and
vile as the State. Moreover, even if the Court
found these statements amounted to deficient
representation, the Court does not find these
actions prejudiced the defense to the point of
making the outcome of the trial unreliable.
Considering the evidence in the record,
including a lengthy admission by Defendant,

---

[6] <u>See</u> Tr. at 20-21.

> the Court cannot say counsel's allegedly deficient opening statement was so serious as to undermine the outcome of the proceeding. Accordingly, Defendant's first ground for relief is denied.

Resp. Ex. L at 2-8 (emphasis added; footnote omitted). On Redmon's appeal, the appellate court affirmed the trial court's denial per curiam. See Redmon, 103 So.3d 150; Resp. Ex. Q.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers these claims in accordance with the deferential standard for federal court review of state court adjudications. After an extensive review of the record and the applicable law, the Court concludes that the state courts' adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Redmon is not entitled to relief on the basis of these claims.

Moreover, even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of these claims are not entitled to deference under AEDPA, Redmon's ineffectiveness claims are still without merit. The record supports the trial court's conclusion. In evaluating the performance prong of the Strickland

ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014), cert. denied, 135 S.Ct. 1483 (2015). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Redmon must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

23

On this record, Redmon has failed to carry his burden of showing that his counsels' representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Redmon has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected when the prosecutor read the agreed-upon stipulation, and had not described the photographs as distasteful and vile. Redmon's ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. See Response at 15-22. Accordingly, Redmon is not entitled to federal habeas relief on ground two.

### C. Ground Three

As ground three, Redmon asserts that counsel were ineffective because they failed to object and move for a mistrial when the prosecutor made improper comments during closing argument. See Petition at 8; Reply at 19-23. He argues that the prosecutor expressed a personal belief in Redmon's guilt, asserted that Redmon's defense was a fabrication, and appealed to religious principles. See id. Redmon raised the ineffectiveness claim in his Rule 3.850 motion. Ultimately, the post-conviction court denied the motion with respect to the claim, stating in pertinent part:

> Defendant alleges that defense counsel was
> ineffective for failing to object to improper
> closing arguments by the prosecutor. In
> support of his claim, Defendant cites the

following    closing    statements    by    the
prosecutor:

> Ladies and gentleman, not to be
> trite but this is really not a love
> story. This is a criminal trial.
> It's about possession of child
> pornography. It's not about an act
> of martyrdom. It's not about who the
> defendant loved or how he lives his
> life or who he's friends with, what
> motivates him.

> This sort of love story is a
> fabrication and it's an attempt to
> explain away the confession [that]
> just kills him. An ironclad
> confession. Ladies and gentlemen,
> just as the defense told you in
> their opening, this really is a
> simple [case] and it is an easy one.
> And one of the most important things
> [...] that you are actually
> instructed by the court that you
> must do, is use your God-given
> commonsense. The commonsense you
> came into this courtroom with and
> you will leave with.

> What this defendant told
> Detective Eckert in the interview
> was the truth. He didn't have time
> to come up with anything else.

(Exhibit "C," pages 176-177.)

Defendant alleges the above comments
reflect the prosecutor's "personal belief in
the case that amounted to an implicit
instruction that based on the prosecutor's own
express belief that what the defendant told
the detective was the truth and that it was
the jury's duty to reach the same conclusion
. . . ." (Defendant's Motion, page 23.) In
order to prevail on an ineffective assistance
of counsel claim on this ground, Defendant
must first show that the comments were
improper or objectionable and that there was

no tactical reason for failing to object. The Court notes that attorneys are allowed wide latitude to argue to the jury during closing argument. <u>Breedlove v State</u>, 413 So.2d 1, 8 (Fla. 1982). Furthermore, "[a] prosecutor's argument should be examined in the context in which it is made. This is particularly so where invited by the nature of the defense." <u>Stancle v. State</u>, 854 So.2d 228, 229 (Fla. 4th DCA 2003).

In the instant case, the prosecutor's comments were a valid response to the defense's argument to the jury that Defendant's initial confession was fabricated and that it was Mr. Southard who downloaded the child pornography. At trial, the defense called Mr. Southard and questioned him about his relationship with Defendant and his interaction with law enforcement during the[ir] investigation. (Exhibit "C," pages 129-143.) Counsel attempted to point out inconsistencies in Mr. Southard's version of the events in order to argue to the jury that Defendant did not download the child pornography, rather it was Mr. Southard. Therefore, when read in context, the prosecutor's comments were a proper attack on the defense theory that it was Mr. Southard who downloaded the child pornography and Defendant only lied to protect him. <u>See Banta v. State</u>, 698 So.2d 860 (Fla. 3d DCA 1997) (holding while statement was improper in isolation, when read in context it was permissible response to defense theory). Accordingly, Defendant has failed to establish the first prong under <u>Strickland</u> . . . .

Resp. Ex. L at 12-13. On appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the merits, the Court considers this claim in accordance with the deferential standard for federal court review of state court

26

adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Redmon is not entitled to relief on the basis of this claim.

Moreover, even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Redmon's ineffectiveness claim, nevertheless, is without merit. The record fully supports the trial court's conclusion. The remarks at issue were not improper.[7] Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 7, 167; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions"). After reviewing the record, viewing the remarks in the context of the trial as a whole, and assessing their "probable impact" on the jury, see

---

[7] See Tr. at 176-77.

<u>United States v. Hill</u>, 643 F.3d 807, 849 (11th Cir. 2011), this Court is convinced that the prosecutor's comments, during his closing argument, did not result in a due process violation.[8]

On this record, Redmon has failed to carry his burden of showing that his counsels' representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Redmon has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected or moved for a mistrial on the basis of the prosecutor's comments. Redmon's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. <u>See</u> Response at 22-28. Accordingly, Redmon is not entitled to federal habeas relief on ground three.

### D. Ground Four

As ground four, Redmon asserts that counsel were ineffective because they failed to object or move for a mistrial during the testimony of Sergeant Kenneth Jones, Detective Fred Cummings, and Ronald Southard. <u>See</u> Petition at 10; Reply at 16-19. Redmon raised the ineffectiveness claim in his Rule 3.850 motion, and the post-

---

[8] The reversal of a conviction is warranted only when improper comments by a prosecutor have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted); <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1291 (11th Cir. 2012) (citation omitted), <u>cert</u>. <u>denied</u>, 133 S.Ct. 322 (2012).

conviction court denied the motion as to the claim, stating in

pertinent part:

> Defendant asserts that he was denied the effective assistance of counsel because "[c]ounsel failed to object and move for mistrial during testimony of law enforcement and cross-examination of defense witness, where . . . testimony concerned other investigations not related to defendant's case and unsubstantiated collateral evidence irrelevant to crimes charged." (Defendant's Motion, page 12.) Specifically, Defendant alleges his attorney should have objected during the testimony of Sergeant Kenneth Jones, Detective Fred Cummings and Ronald Southard. Defendant argues the testimony "was inadmissible, directed the jury's attention to matters not relevant, and influenced [the] jury into finding defendant guilty of crimes charged . . . ." Id.

> In March 2008, Sergeant Jones was in the Special Victim's Unit of the Clay County Sheriff's Office.[9] Sergeant Jones explained that the Unit is sponsored through the Internet Crimes Against Children (the "ICAC"). Sergeant Jones testified regarding the investigative procedures utilized by members of the ICAC in locating persons in possession of child pornography, including the use of certain software programs to access peer-to-peer file sharing networks. Sergeant Jones further explained that ICAC investigators working nationwide communicate the results of their investigations to the Wyoming Internet Crimes Against Children task force as a part of an investigative operation overseen by the Wyoming task force. ICAC investigators have access to the information as it is maintained in a database organized according to State and jurisdiction. They compare files identified as they access and

---

[9] See Tr. at 22-28 (State's direct examination of Sergeant Jones).

search peer-to-peer file sharing networks with information on the Wyoming task force database and thereby determine whether the files are "known child porn images". Sergeant Jones explained "known child porn images" refer to "cases where they've had some confirmation that these are true child pornography. It's known children, known cases, known victims." (Exhibit "C," page 27.)[10] Defendant argues that Sergeant Jones['] statement regarding "known child porn images" constitutes "presumptively harmful testimony." (Defendant's Motion, page 14.) Defendant states, "[w]hile understood that witnesses are permitted to testify to how a matter came about, to include the description, as here, to an investigation and a specialized unit and the object of the same, they cannot give testimony which is misleading to the case . . . [and can] influence the jury by inflaming their passions." Id.

Detective Cummings was also assigned to the ICAC specialized unit.[11] He explained the unit's purpose as follows:

> [P]rimarily to assist local law enforcement agencies in our assigned area in [the] field of computer crimes, computer forensics. We put on training for local state and federal law enforcement people. We assist them in anything that's associated with the internet or computer crimes.
>
> Specifically, the crimes against children. This -- we are primarily tasked with investigating child predators. Those who will travel for the purpose of having sex with children or the possession,

---

[10] See Tr. at 26-27.

[11] See Tr. at 107-14 (State's direct examination of Detective Cummings).

manufacturing, and distribution of child pornography. Those are the main areas of crimes that we are concerned with and again, we assist local law enforcement with that purpose.

(Exhibit "C," page 108.) Defendant argues counsel should have objected to Detective Cummings' testimony concerning "child predators," particularly his statement regarding "those who will travel for the purpose of having sex with children." Defendant alleges the testimony could inflame the passions of the jury and create "hostile emotions towards the defendant." (Defendant's Motion, page 16.)

As an initial matter, the Court finds that neither Sergeant Jones nor Detective Cummings' testimony was objectionable. Rather, as Defendant acknowledges, [the testimony] served the legitimate purpose of explaining how their investigation transpired. As such, the Court does not find counsel's failure to object constitutes deficient performance. Furthermore, assuming <u>arguendo</u>, that counsel's failure[s] to object were unreasonable, Defendant was not prejudiced as a result thereof. The comments by Sergeant Jones and Detective Cummings were made in passing, and it is unlikely that the jurors attached significance to either comment. Certainly, the comments were not so prejudicial that the result of the trial would have been different had trial counsel objected to the testimony.

Defendant also takes issue with the testimony of his former boyfriend and roommate, Ronald Southard, whom Defendant alleges was the person who downloaded the child pornography. In support of his claim, Defendant points to the following portion of the trial transcript[:]

STATE: Please tell the jury, specifically, what the defendant confessed to you?

31

> MR. SOUTHARD: On Sunday before the
> Tuesday that we went to the
> detective's office -- the day before
> I gave [Defendant] the cold shoulder
> and was not talking to him at all
> because I found out some information
> at work from a co-worker, Estrell
> Morrison.
>
> Umm, Sunday he came in my room and I
> asked him -- Estrell said that, I
> mean, years ago she found a video of
> child pornography --
>
> STATE: Sir, you can't talk about
> other people's --
>
> TRIAL COUNSEL: I'll object to him
> telling us what somebody said.
>
> STATE: Specifically, just say what
> the defendant said.
>
> MR. SOUTHARD: He told me -- I asked
> him -- I said, did he download it?
> He said, yes. And I said, why? Are
> you into that? Were you curious, or
> what? And he told me he was going
> through personal issues and that's
> why he did it.

(Exhibit "C," pages 143-144.) Defendant
alleges that Mr. Southard's testimony
concerning what Estrell Morrison found years
ago was presumptively harmful. While trial
counsel objected to the statement as hearsay,
Defendant argues he should have objected on
the grounds that it was an "unsubstantiated
reference to a crime committed by the
defendant" and that the jury could take this
statement "as evidence of guilt of the crimes
charged." (Defendant's Motion, page 16.)
Without reaching the issue of whether
counsel's performance was outside the wide
range of reasonable professional assistance,
the Court finds Defendant cannot demonstrate
that counsel's performance prejudiced the
defense. The line of testimony by Mr. Southard

> was immediately corrected by the State and
> also objected to by trial counsel.[12] In view
> of the brevity of the statement, and in light
> of other substantial evidence of guilt,
> including Defendant's video-taped
> admission,[13] the Court finds Defendant cannot
> demonstrate that that [sic] there is a
> reasonable probability that the outcome of the
> proceeding would have been different absent
> counsel's allegedly deficient performance.
> Strickland, 466 U.S. at 687. Accordingly,
> Defendant has failed to establish the second
> prong of Strickland . . . .

Resp. Ex. L at 8-12. On Redmon's appeal, the appellate court

affirmed the trial court's denial per curiam.

Given the record in the instant action, the appellate court

may have affirmed the denial of Redmon's motion for post-conviction

relief on the merits. If the appellate court addressed the merits,

Redmon would not be entitled to relief because the state courts'

adjudications of this claim are entitled to deference under AEDPA.

After a review of the record and the applicable law, the Court

concludes that the state courts' adjudications of this claim were

not contrary to clearly established federal law and did not involve

an unreasonable application of clearly established federal law. Nor

were the state court adjudications based on an unreasonable

determination of the facts in light of the evidence presented in

---

[12] See Tr. at 143-44.

[13] See Tr. at 50-91, 93; Resp. Ex. C, Redmon's sworn statement
("I Darrick Redmon solely downloaded child pornography onto my
computer.").

the state court proceedings. Thus, Redmon is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Redmon's claim is still without merit. The trial court's conclusion is fully supported by the record. Based on the record in the instant case, counsels' performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Redmon has not shown prejudice. Thus, Redmon's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. See Response at 28-32. Accordingly, Redmon is not entitled to federal habeas relief on ground four.

## VIII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Redmon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Redmon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Redmon appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has

35

determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of October, 2015.


MARCIA MORALES HOWARD
United States District Judge


sc 10/1
c:
Darrick S. Redmon
Ass't Attorney General (Perrone)